```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
JONAS XAVIER CABALLERO,

                       Plaintiff,
                                              MEMORANDUM & ORDER
         - against -                          18-CV-1627 (PKC) (RML)

NURSE SHAYNA, NURSE HANLIN,
ER DR. MARY, CORRECTION OFFICER
ANDREA ELLIOT (Shield #13902),
CORRECTION OFFICER CHRISTOPHE
DOMOND (Shield # 18517), CORRECTION
OFFICER GREGORY TERNIER (Shield #
18960), CORRECTION OFFICER ORLANDO
CHECO (Shield #5783), BROOKLYN
MEDICAL CENTER, and CITY OF NEW
YORK,

                       Defendants.
---------------------------------------------------------x
```
PAMELA K. CHEN, United States District Judge:

Plaintiff Jonas Xavier Caballero ("Plaintiff"), appearing *pro se* and proceeding *in forma pauperis*, brings this action alleging Fourteenth Amendment deliberate indifference claims pursuant to 42 U.S.C. § 1983 against the Brooklyn Medical Center ("BMC").[1] BMC has moved to dismiss Plaintiff's complaint. For the reasons discussed herein, BMC's motion to dismiss is granted in its entirety.

---

[1] Plaintiff also brought this action against the City of New York and various individual city employees (collectively, "City Defendants"). City Defendants filed a motion to dismiss. (Dkt. 41; *see also* Sept. 19, 2018 Minute Entry (construing City Defendants' letter motion for a pre-motion conference as a motion to dismiss).) At oral argument, the Court granted in part and denied in part City Defendants' motion. (*See* Nov. 20, 2018 Minute Entry.) On May 24, 2019, City Defendants indicated that they had reached a settlement with Plaintiff. (Dkt. 79.) In light of this notice of settlement, the Court will only address Plaintiff's complaint as it relates to Defendant BMC.

## BACKGROUND

**I.      Factual Background**

The Court assumes the parties' familiarity with this case, and recites only the facts relevant to BMC's motion to dismiss. Plaintiff has several medical conditions including, *inter alia*, congestive heart failure, high blood pressure, and post-traumatic stress disorder. (Plaintiff's Operative Amended Complaint[2] ("OAC"), Dkt. 1, at ECF[3] 9.) After allegedly being denied medical treatment for several days by various officers at the Brooklyn Detention Complex, Plaintiff was transferred via ambulance to BMC. (*Id.* at 10.) Plaintiff was hospitalized from November 25, 2017 to December 5, 2017 at BMC, until he was transferred to Bellevue for further medical treatment. (OAC, Dkt. 9, at ECF 14, 52 ¶ 36.)

Plaintiff alleges that, while hospitalized at BMC, "[BMC] employees routinely communicated with the escort officers and [Brooklyn Detention Complex] security authorities via telephone, acting in concert to deprive the Plaintiff of his constitutional rights." (Plaintiff's Brief ("Pl.'s Br."), Dkt. 58, at ECF 2.) Specifically, Plaintiff states that he was continuously "shackled" by hand and foot for the duration of his hospitalization and that BMC staff refused to undo the restraints despite Plaintiff's request and the fact that the restraints were "medically contra[-]indicated." (OAC, Dkt. 9, at ECF 23–25.) Plaintiff also alleges that, while at BMC, he

---

[2] During the course of the proceedings, Plaintiff has filed various amendments and supplements that the Court has incorporated into Plaintiff's complaint. The Court has deemed the following dockets as part of Plaintiff's Operative Amended Complaint ("OAC"): Dkt. 1, 9, 15, 28, 52. (*See* June 12, 2018 Order (noting that the Court construes Plaintiff's Operative Amended Complaint to include Dkts. 1, 9, and 15); June 28, 2018 Order (construing Plaintiff's Dkt. 28 Letter as supplementing his OAC); Oct. 5, 2018 Order (granting Plaintiff's Dkt. 52 motion to amend OAC).)

[3] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

was denied exercise, a radio, a television with more than three channels, a pillow, reading and writing materials, telephone access to call his family and legal counsel, access to mental health services, social workers, or administrative staff, a Bible, certain medications he took on a regular basis, and his medical records. (OAC, Dkt. 9, at ECF 17 ¶ 18.) At one point, the BMC medical staff refused to feed Plaintiff for nearly twenty-four hours, until Plaintiff screamed for help, "hoping that a visitor or sympathetic passerby" would hear his pleas and alert a BMC authority. (*Id.* at ECF 34.) Plaintiff also alleges that BMC staff frequently consulted with Brooklyn Detention Complex officers and that, as a result of these consultations, denied Plaintiff's requests to contact his mother or to have BMC staff relay information regarding Plaintiff's medical condition to his mother. (Pl.'s Br., Dkt. 58, at ECF 2.)

Additionally, Plaintiff alleges specific incidents against two nurses that he identifies only as "Nurse Shayna" and "Nurse Hanlin." He alleges that Nurse Shayna refused to remove itchy intravenous tubes ("IVs") that began to hurt after five days. (OAC, Dkt. 9, at ECF 23–24 ¶ 31, ECF 34–35.) Plaintiff alleges that Nurse Shayna watched as Plaintiff was forced to clumsily remove the IVs by himself with one free hand and his mouth, and that she tossed an alcohol swab on the bed, and joked "now stay put" as she left the room. (*Id.*) Plaintiff states that, as a result, he now has scars on both of his arms. (*Id.*) Plaintiff also alleges that Nurse Hanlin yelled about Plaintiff's HIV medication from across the room in front of BDC officers on duty, even after Plaintiff had asked for his right to privacy under the Health Insurance Portability Act ("HIPAA"), and responded by saying that she and the corrections officers "are HIP[A]A". (*Id.* at ECF 24 ¶ 32, ECF 35.) Plaintiff states that, as a result of these incidents, his previously diagnosed post-traumatic stress disorder and heart conditions have significantly worsened. (*Id.* at ECF 35–36.)

## II.     Procedural Background

Plaintiff filed his original complaint on February 28, 2018. (Dkt. 1.)[4] Defendant BMC filed a letter motion for a pre-motion conference on September 4, 2018 seeking to file a motion to dismiss Plaintiff's complaint for failure to state a claim. (Dkt. 42.) On September 19, 2018, the Court construed Defendant BMC's letter motion as a motion to dismiss and ordered supplemental briefing. (Sept. 19, 2019 Order.) Oral argument was held on November 20, 2018. (Nov. 20, 2018 Minute Entry.) At oral argument, the Court granted BMC's motion to dismiss as to Plaintiff's HIPAA claim and Individual Defendant Nurse Hanlin. (*Id.*) The Court reserved decision on BMC's motion to dismiss Plaintiff's remaining claims and ordered further briefing on whether BMC had a contract with New York City to provide medical services to inmates at BDC and/or whether Plaintiff had sufficiently alleged that Defendant BMC and/or its employees were acting under color of state law. (*Id.*) Defendant's motion was fully briefed on February 11, 2019. (Dkt. 75.)

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Twombly*, 550 U.S. at 556). The "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a

---

[4] Plaintiff filed his original complaint in the Southern District of New York. The Honorable Colleen McMahon transferred Plaintiff's complaint to this District on March 15, 2018. (Dkt. 4.)

defendant has acted unlawfully." *Id*. (citation omitted). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679 (citation omitted). "In addressing the sufficiency of a complaint, [the Court] accept[s] as true all factual allegations and draw[s] from them all reasonable inferences; but [the Court is] not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013). At the same time, "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted).

## DISCUSSION

Plaintiff brings Fourteenth Amendment deliberate indifference claims pursuant to § 1983. "It is axiomatic that private citizens and entities are not generally subject to Section 1983 liability." *Hollman v. Cty. of Suffolk*, No. 06-CV-3589 (JFB) (ARL), 2011 WL 280927, at *4 (E.D.N.Y. Jan. 27, 2011) (citing *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 323–34 (2d Cir. 2002)); *see also Reaves v. Dep't of Veterans Affairs*, No. 08-CV-1624 (RJD), 2009 WL 35074, at *3 (E.D.N.Y. Jan. 6, 2009) ("Purely private conduct is not actionable under § 1983, no matter how discriminatory or wrongful.") (internal quotations and citation omitted). Courts in this district have generally held that BMC and its employees do not act under color of state law for purposes of § 1983. *See, e.g.*, *Abdul-Rahman v. Coleman*, No. 10-CV-4691 (CBA) (LB), 2010 WL 5490842, at *1 (E.D.N.Y. Dec. 30, 2010); *Anthony v. Med. Staff at Inst.*, No. 16-CV-1122 (LDH) (LB), 2016 WL 1383491, at *2 (E.D.N.Y. Apr. 7, 2016).

> For the purposes of section 1983, the actions of a nominally private entity are attributable to the state when: (1) the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state ('the compulsion test'); (2) when the state

5

provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the [s]tate,' or the entity's functions are 'entwined' with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity 'has been delegated a public function by the [s]tate,' ('the public function test').

*Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 296 (2001)). "The fundamental question under each test is whether the private entity's challenged actions are 'fairly attributable' to the state." *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)).

Plaintiff argues that, despite its status as a private hospital, BMC should be treated as acting under the color of state law pursuant to the joint action, public function, and/or compulsion tests. (*See generally* Pl.'s Br., Dkt. 58.) However, Plaintiff has not alleged sufficient facts to establish a claim that BMC should be considered a state actor. Therefore, for the reasons discussed *infra*, the Court finds that BMC is a private actor beyond the reach of Plaintiff's § 1983 complaint.

**I.        Joint Action Test**

"Under the 'joint action' doctrine, a private actor can be found 'to act under color of state law for § 1983 purposes if . . . the private party is a willful participant in joint action with the State or its agents." *Hollman*, 2011 WL 280927, at *8 (quoting *Dennis v. Sparks*, 449 U.S. 24, 27 (1980)) (internal brackets omitted). "The touchstone of joint action is often a 'plan, prearrangement, conspiracy, custom, or policy' shared by the private actor and the [state agents]." *Forbes v. City of New York*, No. 05-CV-7331 (NRB), 2008 WL 3539936, at *5 (S.D.N.Y. Aug. 12, 2008) (citing *Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir. 1999)). "Mere cooperation with a state official . . . is insufficient to establish state action." *Estiverne v. Esernio-Jenssen*, 910 F. Supp. 2d 434, 442 (E.D.N.Y. 2012) (citing *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998); *San Filippo v. U.S. Tr. Co. of N.Y.*, 737 F.2d 246, 252, 256 (2d Cir. 1984)).

Instead, "a plaintiff must show that the private citizen and the state official shared a common unlawful goal." *Hollman*, 2011 WL 280927, at *8 (internal quotations and citation omitted).

Plaintiff argues that there are several instances where BMC staff worked in conjunction with Brooklyn Detention Complex officers. (*See* Pl.'s Br., Dkt. 58, at ECF 2 ("[BMC] employees routinely communicated with the escort officers and [Brooklyn Detention Complex] security authorities via telephone, acting in concert to deprive the Plaintiff of his constitutional rights."); *id.* ("[BMC] employees acted jointly with prison officials when they contacted [Brooklyn Detention Complex] operations officials to ascertain whether they would allow the Plaintiff to contact his mother, after which Plaintiff was denied his request."); OAC, Dkt. 9, at ECF 24–25 (noting that BMC staff "regularly refused to unshackle [Plaintiff] even when shackling was medically contra[-]indicated and when [Plaintiff] did not pose a threat to [BMC] staff or [Brooklyn Detention Complex] escorts"); Pl.'s Br., Dkt. 73, at 2 ("In fact, [BMC] employees regularly deferred to the orders of the prison officials when deciding whether [Plaintiff] should remain shackled.").) However, none of these allegations—which are largely conclusory—show that BMC staff affirmatively agreed to engage in unconstitutional conduct with Brooklyn Detention Complex officers,[5] *i.e.*, Plaintiff does not sufficiently allege that BMC staff and Brooklyn Detention Complex officers "shared a common unlawful goal." *Hollman*, 2011 WL 280927, at *8. Plaintiff's arguments that BMC employees' "deferral" to the instructions or demands of Brooklyn Detention Complex officers are not enough to show that BMC employees were willful participants

---

[5] The Court assumes, *arguendo*, that at least some of the conduct that Plaintiff alleges does rise to the level of a constitutional injury. However, the Court notes that violations of the New York City Correctional Health Care Minimum Standards, which Plaintiff frequently mentions (*see, e.g.*, Pl.'s Br., Dkt. 73, at 2–3), do not give rise to liability under § 1983. *See Santana v. City of New York*, No. 13-CV-3034 (SAS), 2014 WL 1870800, at *7 & n.114 (S.D.N.Y May 8, 2014) (citing *Patterson v. Coughlin*, 761 F.2d 886, 891 (2d Cir. 1985)).

in a common scheme or shared a common unlawful goal. *See Sykes v. McPhillips*, 412 F. Supp. 2d 197, 202–03 (N.D.N.Y. 2006) (finding that though a hospital "accommodated the particular security measures characteristic to incarceration, . . . this conduct is really nothing more than the common sense accommodation of security officers in the proximity of a patient" rather than evidence of joint action between the private hospital and the state officers); *see also Hollman*, 2011 WL 280927, at *8 (noting that a private citizen who acted in accordance with police orders was not a willful participant in the conduct, and therefore not acting jointly with a state actor) (citing *Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 195–96 (3d Cir. 2005)); *see also Ciambriello*, 292 F.3d at 323–24 ("A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity."). Accordingly, the Court finds that BMC does not qualify as a state actor under the joint action test.[6]

## II. Public Function Test

Under the public function test, "[s]tate action may be found in situations where an activity that traditionally has been the exclusive, or near exclusive, function of the State has been contracted out to a private entity." *Grogan v. Blooming Grove Volunteer Ambulance Corps*, 768 F.3d 259, 264–65 (2d Cir. 2014) (internal quotations and citation omitted). "Non-public medical providers have sometimes been deemed 'state actors' when treating prisoners of the state, such as

---

[6] Plaintiff also argues that "the employees of [BMC] conspired with . . . [Brooklyn Detention Complex officers], in turn causing their own actions to fall under the color of state law, and thus within the parameters of a Section 1983 claim." (Pl.'s Br., Dkt. 73, at 3.) To the extent that Plaintiff is attempting to make a § 1983 conspiracy claim, such a claim fails for the same reasons that Plaintiff's joint action claim fails. *See Ciambriello*, 292 F.3d at 323–24 (applying the same standard as the joint action test, stating that "[t]o state a claim against a private entity on a section 1983 conspiracy theory, the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act"); *see also Cooper v. City of New York*, No. 14-CV-3698 (ENV) (PK), 2016 WL 4491719, at *5 (E.D.N.Y. Aug. 25, 2016) ("Conclusory statements that the hospital defendants acted jointly with the City defendants, or that they were in contact with one another, are not enough to establish conspiracy liability.").

8

where private medical professionals work inside a prison facility, or where off-site private hospitals have an ongoing contractual arrangement with prisons." *Kavazanjian v. Rice*, No. 03-CV-1923 (FB) (SMG), 2008 WL 5340988, at *12 (E.D.N.Y. Dec. 22, 2008); *see also West v. Atkins*, 487 U.S. 42, 54 (1988) (holding that a private physician who contracts with the State to provide medical care to inmates is a state actor). "Providing isolated emergency treatment to a prisoner on equal terms with the general public, however, does not constitute state action . . . ." *Kavazanjian*, 2008 WL 5340988, at *12.

Plaintiff argues that BMC has assumed the public function of providing medical care to inmates because "inmates are routinely transferred to [BMC]." (Pl.'s Br., Dkt. 50, at ECF 1.) He also argues that even if BMC does not have an explicit contract with the City of New York ("City"), it has nonetheless "voluntarily assume[d] the state's obligation to provide medical care to inmates" by admitting Plaintiff to the hospital from the emergency room. (Pl.'s Br., Dkt. 73, at 4.) Plaintiff's arguments are unavailing. First, Plaintiff has not alleged any facts from which to reasonably infer that BMC has a contract with the City to provide medical services to inmates.[7] Second, as Plaintiff seems to acknowledge, a private hospital is not transformed into a state actor when it provides emergency treatment services to inmates on equal terms with the general public. *See, e.g.*, *Thompson v. Booth*, No. 16-CV-3477 (KMK), 2018 WL 4760663, *10 (S.D.N.Y. Sept. 28, 2018) (collecting cases). Furthermore, the Court does not find that the mere fact that BMC admitted Plaintiff from the ER is enough to find that BMC had voluntarily assumed care of Plaintiff. *See Kavazanjian*, 2008 WL 5340988, at *12 (finding that a private hospital who treated

---

[7] The Court also notes that BMC has submitted a declaration from Carol Hanson-Beckles, Director of Case Management at BMC, stating that BMC does not have any contract with the City of New York to provide medical care to inmates at Brooklyn Detention Complex. (Declaration of Carol Hanson-Beckles, Dkt. 69-1, at 2.)

inmate in ER and then admitted him for 38 hours for further observation was not a state actor pursuant to the public function test). Therefore, the Court finds that BMC does not qualify as a state actor under the public function test.

### III. State Compulsion Test

"Under the state compulsion test, 'a State normally can be held responsible for a private decision only when it has exercised coercive power or provided such significant encouragement, overt or covert, that the choice must in law be deemed to be that of the State.'" *Doe v. Harrison*, 254 F. Supp. 2d 338, 342 (S.D.N.Y. 2003) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)). In the medical context, "[s]tate action through state compulsion requires actual coercion by a state actor that impacts upon the private physician's decision-making." *Id.*

Plaintiff argues that when he asked BMC staff to be unshackled, the staff "yielded to the coercive power of the state" when they "consulted and . . . deferred their decision" about whether to unshackle Plaintiff to the Brooklyn Detention Complex officers. (Pl.'s Br., Dkt. 73, at ECF 4.) Plaintiff also argues that BMC employees refused to unshackle him even though the use of shackles was "medically contra[-]indicated." (OAC, Dkt. 9, at ECF 24–25.) However, besides these bare conclusory statements, Plaintiff does not allege any specific facts from which to reasonably infer that the staff at BMC changed Plaintiff's course of treatment, or denied him medical care, as a result of demands or orders from Brooklyn Detention Complex officers. Furthermore, Plaintiff's argument is undercut by his previous assertions that BMC employees acted in concert or were part of a conspiracy to deny Plaintiff his constitutional rights. (*See, e.g.*, Pl.'s Br., Dkt. 73, at 3.) At most, Plaintiff's allegations show that BMC cooperated with the security restrictions that Brooklyn Detention Complex officers imposed while Plaintiff was hospitalized. Cooperation is not compulsion. Without more specific allegations as to how Brooklyn Detention Complex officers compelled BMC employees, Plaintiff has failed to allege

that Brooklyn Detention Complex officers "provided such significant encouragement, overt or covert, that the choice must in law be deemed to be that of the State.'" *Doe*, 254 F. Supp. 2d at 342 (S.D.N.Y. 2003); *cf. Sykes*, 412 F. Supp. 2d at 202 (finding that though a hospital "accommodated the particular security measures characteristic to incarceration, . . . this conduct is really nothing more than the common sense accommodation of security officers in the proximity of a patient").

* * *

Given that Plaintiff has failed to allege specific facts to support a conclusion that BMC is a state actor under the joint action, public function, or state compulsion tests, the Court finds that BMC is a private actor. Likewise, individual Defendants Nurse Shayna and ER Dr. Mary, as employees of BMC, are private actors as well. *See Abdul-Rahman*, 2010 WL 5490842, at *1 (holding that BMC employees are private actors). As a result, BMC and its employees are all beyond the reach of Plaintiff's § 1983 complaint.

## CONCLUSION

For the reasons stated herein, Defendant BMC's motion to dismiss is granted in its entirety. The Court, pursuant to the *in forma pauperis* statute, *sua sponte* dismisses all claims against Nurse Shayna and ER Dr. Mary. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). Defendants Brooklyn Medical Center, Nurse Shayna, and ER Dr. Mary are terminated from this action.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: June 14, 2019
Brooklyn, New York